67 F.3d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Richard A. BENDIS, W. Terrance Schreier, Robert H. Mann, Jr.
and John Pappajohn, Plaintiffs/Appellants,
v.
ALEXANDER & ALEXANDER, INC., Defendant/Appellee.
 No. 93-3401.
 United States Court of Appeals, Tenth Circuit.
 Sept. 14, 1995.
 
 1
 ORDER AND JUDGMENT**
 
 
 2
 Before MOORE and LOGAN, Circuit Judges, and DAUGHERTY, District Judge.*
 
 
 3
 DAUGHERTY, District Judge.
 
 
 4
 The Plaintiffs appeal from the district court's granting of two separate summary judgment motions in favor of Defendant Alexander & Alexander, Inc. ("A & A") prior to trial, and A & A's motion for a directed verdict during a jury trial on the remaining issues. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 
 5
 I. FACTS.
 
 
 6
 The Plaintiffs, Richard A. Bendis, W. Terrance Schreier, Robert H. Mann, Jr. and John Pappajohn, are former officers and/or directors of Continental Healthcare Systems, Inc. ("CHSI"), a corporation which leased television sets and sold turnkey computer systems to hospitals. A & A acted as insurance broker for CHSI and agreed to procure insurance policies which would provide comprehensive liability coverage for the company and its officers and directors. A & A procured five separate insurance policies, including an Executive Liability and Indemnification Policy and an Executive Risk Policy (directors and officers liability policy) with Federal Insurance Company ("Federal"),[1] and a Commercial General Liability Policy with Hartford Accident and Indemnity Co. ("Hartford.") A & A acted only as a broker. The various insurers issued the policies directly to CHSI.
 
 
 7
 In 1986, CHSI was acquired and merged with TBG Acquisitions, Inc. ("TBG"). In November of that year, George Bridgmon filed a securities fraud action against CHSI, Bendis, Schreier and TBG, Bridgmon v. Continental Healthcare Systems, Inc., et al., Case No. 86-C-10221, in the District Court of Johnson County, Kansas. Bendis and Schreier notified Federal and Hartford that the suit had been filed and requested indemnification under the policies. Federal and Hartford denied coverage and refused to either defend or indemnify. The Bridgmon lawsuit was dismissed with prejudice in December 1987.
 
 
 8
 In June 1988, TBG filed suit against the Plaintiffs in the United States District Court for the Southern District of New York, TBG, Inc. v. Bendis, et al., Case No. 89-2423, claiming that during the merger and acquisition of CHSI by TBG, the Plaintiffs provided false and misleading information regarding the financial status of CHSI. TBG's complaint alleged that the Plaintiffs intentionally violated federal securities laws and asserted common law claims of fraud and negligent misrepresentation. The TBG litigation was transferred to the United States District Court for the District of Kansas where it is still pending.
 
 
 9
 In January 1989, the Plaintiffs filed a declaratory judgment action against Federal in the United States District Court for the District of Kansas, Bendis, et al. v. Federal Insurance Company, Case No. 89-2035, asserting that Federal had a duty to defend all aspects of the TBG lawsuit, notwithstanding a specific exclusion in the policy for violations of securities laws, and to indemnify the Plaintiffs for any liability on the common law claims. In December 1989, the Court ruled that because securities fraud claims were specifically excluded, and because the common law claims were based on the same facts as the securities fraud claims, the policy afforded no coverage for any of the claims involved in the TBG lawsuit. This Court affirmed the district court's ruling in June 1991.
 
 
 10
 In June 1990, the Plaintiffs filed suit against Hartford in the United States District Court for the District of Kansas, Bendis, et al. v. Hartford Accident & Indemnity Co., et al., Case No. 90-2198, also seeking defense and indemnity for the claims asserted against them in the TBG lawsuit. In September 1993, the United States District Court for the District of Kansas granted summary judgment in favor of Hartford, finding that the TBG claims did not result from "an occurrence" and were not for "property damage" as those terms are defined in the Hartford policy.
 
 
 11
 In June 1991, the Plaintiffs filed the present action against A & A, alleging that A & A breached its duties as risk manager for CHSI, and to procure insurance coverage for the Plaintiffs in regard to both the Bridgmon and TBG lawsuits.[2] In June 1993, the district court granted A & A's first motion for partial summary judgment on the Plaintiffs' claims that A & A breached its duty to procure insurance coverage for the Bridgmon lawsuit, holding that the claims were barred by the applicable Kansas statutes of limitations. In October of that year, the district court granted in part A & A's second motion for summary judgment on the Plaintiffs' claims that A & A breached its duties as risk manager for CHSI, concluding that those claims were also barred by limitations. In November 1993, the parties went to trial on the Plaintiffs' remaining claim against A & A for breach of its duty to procure insurance coverage for the TBG lawsuit. After presentation of the Plaintiffs' case, the district court granted A & A's motion for a directed verdict, concluding that the Plaintiffs had failed to present sufficient evidence from which the jury could reasonably find in their favor. This appeal followed.
 
 
 12
 II. ISSUES.
 
 
 13
 (A) Statute of Limitations Issues.
 
 
 14
 As indicated above, this case presents two separate limitations issues, both of which were decided in favor of Defendant A & A on summary judgment. We review the district court's grant of summary judgment de novo, applying the same standard as the district court under Rule 56 of the Federal Rules of Civil Procedure. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). Summary judgment is warranted when there is no dispute over the material facts and that the moving party is entitled to judgment as a matter of law. Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc., 912 F.2d 1238, 1241 (10th Cir.1990). The Court must view the evidence in the light most favorable to the nonmoving party. Id.
 
 
 15
 The Plaintiffs first assert on appeal that their breach of contract claim against A & A for failing to procure insurance coverage for the Bridgmon lawsuit is not time-barred. The Plaintiffs contend that the contract arose in Missouri where A & A's wrongful conduct occurred and thus the longer Missouri limitations period rather than the shorter Kansas period should apply. We disagree.
 
 
 16
 When exercising its diversity jurisdiction, a federal court "applies the statute of limitations which would be applied by a court of the forum state ..." Dow Chemical Corp. v. Weevil-Cide Co., Inc., 897 F.2d 481, 483-484 (10th Cir.1990), citing Kitchens v. Bryan County Nat'l Bank, 825 F.2d 248, 254-255 (10th Cir.1987). It is well established that, under Kansas law, "[t]he general rule in respect to limitation of actions is that the law of the forum governs, and if any exceptions to this rule are to be recognized, such exceptions must be found in the law of the forum itself." Green v. Kensinger, 429 P.2d 95, 98 (Kan.1967). The pertinent Kansas statute of limitations regarding the breach of an oral contract is three years. KSA Sec. 60-512(1). Elliott v. White, O'Connor and Warner, 750 F.Supp. 451, 454 (D.Kan.1990). All parties agree that a cause of action for breach of contract under Kansas law accrues when the defendant fails to do the thing agreed to, "irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." Pizel v. Zuspann, 795 P.2d 42, 54 (Kan.), modified on other grounds upon denial of rehearing, 803 P.2d 205 (1990), citing Price, Administrator v. Holmes, 422 P.2d 976 (Kan.1967). Hartford and Federal issued the policies in question on May 1, 1986 and the Plaintiffs' suit was filed on June 4, 1991, clearly outside the three-year period allowed by KSA Sec. 60-512(1).
 
 
 17
 The Plaintiffs, however, rely on K.S.A. 60-516 as an exception to this general rule of lex fori, to urge that the law of Missouri should be applied. That statute provides:
 
 
 18
 "Where the cause of action has arisen in another state or country and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state except in favor of one who is a resident of this state and who has held the cause of action from the time it accrued."
 
 
 19
 KSA 60-516.
 
 
 20
 The Plaintiffs contend that the cause of action arose in Missouri because A & A allegedly breached the oral contract in its office in Kansas City, Missouri. As a result, it is the Plaintiffs' position that the action should be governed in Kansas by the Missouri five-year limitation period, R.S.Mo. Sec. 516.120, and under K.S.A. 60-516, they should be allowed to proceed in Kansas because the action is not time-barred in Missouri. The Plaintiffs rely on certain language from the Green case and this Court's decision in Dow Chemical to support this position.
 
 
 21
 First, the Plaintiffs' argument is directly contrary to the plain and unambiguous wording of K.S.A. 60-516 itself. That statute is applicable by its terms only when a cause of action is time-barred in the foreign jurisdiction. The statute does not state that a longer foreign limitations period may be used to extend the time for filing of an action in Kansas that would be otherwise time-barred in Kansas, and the Kansas courts have so held. See, Newell v. Harrison Engineering and Construction Corp., 89 P.2d 869 (Kan.1939); Green, 429 P.2d 95; Muzingo v. Vaught, 859 P.2d 977 (Kan.App.1993).
 
 
 22
 The Plaintiffs' reliance on Green is misplaced. Green involved a predecessor statute to K.S.A. 60-516. This earlier statute (G.S.1949, 60-310) read as follows:
 
 
 23
 "Where the cause of action has arisen in another state or country, between nonresidents of this state, and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state."
 
 
 24
 The Plaintiffs cite Green for the proposition that, under Kansas law, the applicable limitations period is that of the state in which the cause of action arose. In an earlier decision discussing the predecessor of K.S.A. 60-516, as it read when Green was announced, this circuit held specifically that such statute "does not undertake to extend generally the time within which suit may be commenced in Kansas on a cause of action arising in another state between nonresidents of Kansas which has not become barred by the laws of a foreign state ..." Panhandle Eastern Pipe Line Co. v. Parish, 168 F.2d 238, 241 (10th Cir.1948).
 
 
 25
 Green did not allow the case which arose in California to proceed in Kansas, as it was between California residents and was barred in California--not because the California limitation was longer than Kansas. Green, under the earlier version of K.S.A. 60-516, does not fit our facts nor does it fit the amended K.S.A. 60-516, which applies in this case.
 
 
 26
 K.S.A. 60-516 is well analyzed and explained in the recent Kansas Appeals Court case of Muzingo. Notwithstanding that the case arose in a foreign state and the Green opinion, the Kansas Court of Appeals found that the limitations statute of Kansas was applicable--not the longer limitations statute in the foreign state. The Kansas Court of Appeals stated that "[b]ecause the [Green ] court had already determined that the parties were residents of California and it would later determine that the California statute of limitations would bar the action, the court's broad statement that California law applied because the action arose in California simply framed the remaining question." 859 P.2d at 980. This remaining question was whether a nonresident plaintiff could maintain an action in Kansas against a nonresident defendant that was time-barred in California but not in Kansas. In Muzingo, the Court stated that "[o]nly when the court has decided that the borrowing statute [K.S.A. 60-516] is applicable should it look to the limitation law of a foreign jurisdiction," 859 P.2d at 979, and that "this earlier version was interpreted by the Supreme Court as intended 'not to enlarge the statutory period in other sections of our statutes, but under certain circumstances to narrow the period of limitation,' " id., quoting Newell. Muzingo further held that "[t]his exception found in the present statute is clearly intended to permit residents [of Kansas] to file actions in this state which arise in foreign states, although the actions would be untimely filed in the foreign states. However, when filed in this state, the action must be timely filed under this state's applicable statute of limitations. 'Another state's statute may not be used to extend the Kansas limitations period--to make timely an action barred by Kansas law.' " 859 P.2d at 980 (citation omitted). We fully agree with the findings made in Muzingo and find that it is applicable to our case, both as to facts and law.
 
 
 27
 The Plaintiffs' reliance on Dow Chemical is also misplaced. That opinion did repeat the statement in Green to the effect that Kansas courts would apply the limitations period of the state where the claim arose. 897 F.2d at 484. The Muzingo opinion found the statement in Green overbroad and taken out of context by those who cited it, and it expressly rejected that reading of K.S.A. 60-516. See, 859 P.2d at 980. Further, although Dow Chemical considered the present version of K.S.A. 60-516 and did not disagree that the cause of action arose in Wisconsin, it is distinguishable. Dow Chemical determined that the trial court had misapplied the Wisconsin limitations statute, vacated the verdict which was based on such misapplication, and remanded the case for further proceedings consistent with the opinion. It is threshold in applying the present K.S.A. 60-516 to determine where the cause of action arose and if in a state other than Kansas whether under the proper limitations statute of that state the cause of action cannot be maintained thereon by reason of lapse of time. This is so because the exception in the statute to the general lex fori rule would not apply in favor of a Kansas resident unless the cause of action was out of time in the foreign state.
 
 
 28
 As Muzingo so clearly stated, it is a condition precedent to the application of the exception to lex fori limitations that under the foreign state the action cannot be maintained. Then a resident of Kansas who has held the cause of action from the time it accrued could get the benefit of reliance upon the applicable Kansas statute of limitations. Dow Chemical was remanded for the trial court's determination of the proper application of the foreign statute of limitations which must necessarily show that the period has lapsed for the exception to allow a Kansas resident who has held the cause of action since it accrued to then use the Kansas limitations statute in a Kansas action. Dow Chemical never reached the threshold point of determining if the Wisconsin limitations when properly applied foreclosed the plaintiff's action.
 
 
 29
 The second statute of limitations issue presented in this case involves the district court's determination that the Plaintiffs' claims against A & A for breach of its duties as risk manager are also time-barred.[3] The Plaintiffs apparently concede that their risk management claims were filed outside the applicable Kansas statutes of limitations, whether such claims are considered as tort or contract claims,[4] but urge that in this case the statutes of limitations should be tolled under the rule applied in Price, Administrator v. Holmes, 422 P.2d 976 (Kan.1967), and Keith v. Schiefen-Stockham Insurance Agency, Inc., 498 P.2d 265 (Kan.1972).[5]
 
 
 30
 The Price case involved both tort and contract claims arising from the faulty execution of a will. The suit in that case was filed more than three years after the will was executed, but less than two years after the will was ultimately declared void by the Kansas Supreme Court. That Court held that the statute of limitations should be tolled during the pendency of the will contest proceedings. The Court stated:
 
 
 31
 "The rule in this jurisdiction is that if a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended or tolled, during the time the restraint incident to the proceeding continues."
 
 
 32
 Price, 422 P.2d at 982, citing In re Estate of Brasfield, 214 P.2d 305 (Kan.1950); Newcom, Administrator v. Potterf, 318 P.2d 1069 (Kan.1957).
 
 
 33
 In Keith, the Court found that the statute of limitations is tolled when a party is effectively prevented from exercising a legal remedy. 498 P.2d at 272. Effective prevention occurs when the decision in a pending action is "practically conclusive" and where a successful result in that action is a "prerequisite to [the plaintiff's] right to maintain a new action." Price, 422 P.2d at 983 (citations omitted). In this situation, a second lawsuit would be "a potentially fruitless and costly act ..." Mo-Kan Teamsters Pension Fund v. Creason, 669 F.Supp. 1532, 1538 (D.Kan.1987).
 
 
 34
 The Plaintiffs in this case contend that they were effectively prevented from filing suit on their risk management claims during the pendency of the Federal lawsuit. In that lawsuit, the Plaintiffs sought insurance coverage for the claims asserted against them in the TBG suit. The Plaintiffs assert that if they had in fact prevailed against Federal, they would not have sustained any damages for which they could have sought recovery against A & A.
 
 
 35
 The district court found this argument unpersuasive, finding that the damage was incurred by the Plaintiffs when A & A failed to procure insurance coverage for the securities fraud claims and that no litigation with Federal was necessary to establish this noncoverage. The Court stated that the Plaintiffs' allegation that A & A breached its duty to perform a risk evaluation was also in no way dependent on the outcome of the Federal case.
 
 
 36
 We agree with the district court's decision on this issue. Because the Plaintiffs were aware at the outset of the Federal lawsuit that they were not covered for any securities fraud claims, there was nothing further to be resolved by the suit in this regard and certainly nothing that could be deemed "practically conclusive."[6] The district court's decision should be affirmed.
 
 
 37
 (B) Judgment As A Matter Of Law.
 
 
 38
 After granting in part A & A's second motion for summary judgment, the district court conducted a jury trial on the Plaintiffs' failure to procure insurance coverage claim against A & A arising out of the TBG lawsuit. After the conclusion of the Plaintiff's evidence, the Court entered a directed verdict in favor of A & A. The Plaintiffs contend on appeal that there is sufficient evidence to defeat a motion for directed verdict.
 
 
 39
 The granting of a motion for directed verdict is reviewed using the same standard used by the trial court in ruling on the motion: "[w]hether the evidence is sufficient to create an issue for the jury." Black v. Hieb's Enterprises, Inc., 805 F.2d 360, 364 (10th Cir.1986) (citing Wren v. Spurlock, 798 F.2d 1313, 1317 (10th Cir.1986), cert. denied, 479 U.S. 1085 (1987). The evidence must be construed in the light most favorable to the nonmoving party. O.E.R., Inc. v. Hickerson, 880 F.2d 1178, 1180 (10th Cir.1989).
 
 
 40
 In order for the Plaintiffs to succeed on their failure to procure insurance coverage claim against A & A, the Plaintiffs must show, by a preponderance of the evidence, that the insurance coverage sought was generally available in the insurance industry during the relevant time period. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc., 739 P.2d 239, 244 (Colo.1987). The district court found, under the evidence presented by the Plaintiffs, that a reasonable jury could not find that National Union would have issued its directors and officers policy to CHSI in 1986 in substantially the same form as it did in 1983. We agree.
 
 
 41
 An examination of the testimony of the vice-president of A & A who negotiated the directors and officers policies indicates clearly that it was by no means certain that the same directors and officers coverage would have been available to CHSI in 1986. In response to a question regarding the availability of insurance coverage for mergers and acquisitions, Ms. Carol Shreve stated that companies were "very hesitant" and "very restrictive" regarding such coverage. Aplt.App. at 191. Ms. Shreve testified that the premium cost for such policies had gone up "tremendously" as a result of the insurance companies "experiencing a tremendous number of losses with regard to directors and officers liability ... [T]hey experienced a huge increase in sheer numbers of losses, but also in the severity of what the defense costs were amounting to as well as actual claims paid." Applee Supp.App. at 49. Ms. Shreve stated that the majority of her clients were getting exclusions for mergers and acquisitions, as did CHSI.
 
 
 42
 As to the National Union policy specifically, Ms. Shreve indicated that National Union was usually more restrictive than Federal (Chubb) in their mergers and acquisitions policies and that the Chubb policies were perceived as being "the Cadillac as far as providing the broadest coverage." Id. at 44. Ms. Shreve additionally testified that the policy issued by National Union in 1986 was substantially changed and "much more restrictive" than the 1983 policy issued to CHSI. Id. at 46-47.
 
 
 43
 From the evidence presented, it would be speculation for the jury to find in the Plaintiffs' favor on the failure to procure insurance coverage issue. The jury could not reasonably infer from the facts presented that the desired merger and acquisition coverage would have been available to CHSI in 1986. See, Bafia v. Northern Indiana Public Service Co., 993 F.2d 1306, 1309 (7th Cir.1993); Tyrrell v. Dobbs Investment Co., 337 F.2d 761, 765 (10th Cir.1964). As a result, the Court properly directed a verdict in favor of A & A on the Plaintiffs' failure to procure insurance coverage claims.[7]
 
 
 44
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Prior to the issuance of the Federal directors and officers liability policy, CHSI had directors and officers coverage with National Union Fire Insurance Company ("National Union."). A & A recommended that CHSI change its insurance carrier for the directors and officers policy from National Union to Federal Insurance Company, part of the Chubb Group
 
 
 [2]
 On July 10, 1991, the present case was consolidated with the Hartford case for discovery and trial purposes. The judgment in favor of Hartford in that case was also appealed to this Court, but the appeal in Hartford was dismissed by this Court on June 22, 1995
 
 
 [3]
 The district court additionally ruled that the Plaintiffs' claims against A & A for failure to procure insurance coverage for defense of securities fraud claims were time-barred but the Plaintiffs do not appeal from that ruling
 
 
 [4]
 Under Kansas law, tort claims must be brought within two years, KSA Sec. 60-513(a)(4), and oral contract claims within three years, KSA Sec. 60-512(1)
 
 
 [5]
 The Plaintiffs also contend, as they did regarding the Bridgmon lawsuit, that the risk management claim should be governed by the Missouri statutes of limitation. For the reasons set forth above, we reject this argument
 
 
 [6]
 The Plaintiffs argue in this connection that the Federal lawsuit concerned Federal's duty to defend the securities fraud claims regardless of the fact of noncoverage. The Plaintiffs assert that if they had prevailed in the Federal lawsuit, they would have been afforded a defense to the securities fraud claims, as well as coverage for the common law claims, and thus might not have sustained any damage attributable to A & A. We agree with the district court that, in bringing the suit against Federal, the Plaintiffs were seeking to mitigate the losses they sustained as a result of A & A's failure to perform a risk evaluation. In such a situation, the statute should continue to run as to the underlying claim, regardless of the possibility that the Plaintiffs may eventually recoup all or part of their losses
 
 
 [7]
 Because we affirm the directed verdict, we need not address the Defendant's contention that the district court should have granted the Motion for Summary Judgment in full in the first instance, rather than conducting a jury trial