LUMBERMENS MUTUAL INSURANCE COMPANY, Mansfield, Ohio, Appellant,

v.

Robert BOWMAN and Walter Lewis and W. A. Thornberry, d/b/a Pete Thornberry & Company, Appellees.

No. 7027.

United States Court of Appeals Tenth Circuit.

Jan. 10, 1963.

LeFel E. Oman, Las Cruces, N. M.
(W. C. Whatley and R. E. Riordan, Las
Cruces, N. M., on the brief), for appel-
lant.

James T. Martin, Jr., and R. C. Gar-
land, Las Cruces, N. M., for appellees,
Robert Bowman and Walter Lewis.

T. K. Campbell, Las Cruces, N. M., for
appellee, W. A. Thornberry, d/b/a Pete
Thornberry & Co.

Before PICKETT, BREITENSTEIN
and HILL, Circuit Judges.

HILL, Circuit Judge.

The appellees, Robert Bowman and
Walter Lewis (hereinafter referred to as
Bowman and Lewis, or collectively, as
plaintiffs) brought this suit in the New
Mexico State Court against the appellant,
Lumbermens Mutual Insurance Company
(hereinafter referred to as Lumbermens),
to recover the face amount of a fire in-
surance policy, alleged to have been in
force and effect at the time of the fire
loss. The case was removed to the United
States District Court for the District of
New Mexico by Lumbermens and it,
thereafter, filed a third-party complaint
against appellee, W. A. Thornberry, d/b/a
Pete Thornberry and Company (herein-
after referred to as Thornberry).

Trial of the entire case was had to a
jury and a verdict was returned in favor
of plaintiffs on their complaint and Thorn-
berry on the third-party complaint. Lum-
bermens appeals from the judgment ren-
dered on such verdicts specifying 11
grounds of error which may be summar-
ized as follows: (1) The court erred in
refusing to direct a verdict for it on the
complaint because, (a) as a matter of law,
there was no contract of insurance in
force on the date the fire occurred, and
(b) no written proof of loss was ever filed
with it by the plaintiffs; (2) The court
erred in instructing the jury; (3) The
court erred in submitting to the jury any
question concerning Lewis' right to re-
cover because at no time was any policy
of insurance issued to him; and (4) If
the verdict and judgment in favor of
plaintiffs are proper then, as a matter of
law, it was entitled to judgment against
the third-party defendant, Thornberry.

The record discloses that in 1954,
Thornberry was appointed agent for Lum-
bermens with authority to solicit and
write fire insurance policies for it in Las
Cruces, New Mexico, and vicinity. Under
the terms of the agency agreement, which
is a lengthy and elaborate document,
Thornberry was authorized to "counter-
sign and deliver policies of insurance
signed by the authorized officials of the
Company, and to request or prepare cus-
tomary endorsements, changes, assign-
ments, transfers and modifications of pol-
icies from time to time where loss has
not occurred," and he agreed "to pay to
the Company all premiums arising out of
insurance written under this agreement,
whether or not collected by the Agent
[Thornberry] from the insured." He
further agreed "that all premiums re-
ceived by the Agent are the property of
the Company and shall be held by him as
trustee for the Company until delivered to
the Company and the privilege, if grant-
ed, of retaining commissions from the
premiums received by the Agent shall not
be construed as changing the relationship
of the respective parties hereto." Thorn-
berry continued to serve as agent for
Lumbermens under this agreement

throughout all of the time pertinent to this controversy and until his agency was terminated by Lumbermens on April 25, 1961.

On January 30, 1956, Thornberry wrote and issued a fire insurance policy in the face amount of $20,000.00 upon a commercial building located in Las Cruces and owned, at that time, by one Hufstedler. The policy was for a five year period and the premium therefor in the amount of $1,178.00 was payable in five annual installments. The five annual installments were duly and timely paid and the policy remained in full force for its five year duration. During the term of this policy and in July, 1959, Bowman purchased the building from Hufstedler with Thornberry as the real estate broker in this transaction and who, at the time it was closed, prepared an endorsement to the policy showing the change to Bowman as the named insured. In December, 1959, and still within the five year term of the policy, Bowman conveyed an undivided ½ interest in the insured premises to Lewis. Thornberry did not act as the real estate broker in this transaction but both plaintiffs went to his office to discuss the insurance and, at that time, informed him of the transfer of the ½ interest to Lewis. As a result of this conversation,[1] Thornberry, however, did not make any change in the name of the insured upon the policy.

In December, 1960, approximately a month before the policy was due to expire and in accordance with the terms of the agency agreement, Lumbermens sent Thornberry a "Renewal Notice", notifying him of the renewal date of the policy and of the due date of the next annual premium. At the same time, he received from Lumbermens a notice of the dividend to be applied against any premium collected on the policy. On December 12, 1960, at the direction of Thornberry, his secretary sent a premium billing to Bowman, who did not recall receiving it. On either February 1st or 2nd of 1961, Thornberry's secretary, again at his direction, attempted to contact Bowman by telephone to notify him that the insurance premium was overdue but Bowman could not be reached. On February 13, 1961, the office secretary sent a second premium billing in the amount of the usual annual premium upon the policy, and, after receipt of this billing, Bowman and Lewis remitted to Thornberry the amount requested and this sum was deposited in Thornberry's Trust Account by his secretary on March 1, 1961. No attempt has ever been made to refund this premium to Bowman and Lewis and no new insurance contract in writing was delivered to them.[2]

Thereafter, and on March 26, 1961, the insured building was destroyed by fire. Thornberry promptly advised Lumbermens of the loss and, after securing a "Non-Waiver Agreement" from the plaintiffs, it proceeded with an investigation of the fire. On the day following the

---

1. On direct examination, Bowman testified about this occurrence as follows:
  "Q. Did you discuss this particular policy with the agent for the Lumbermens Mutual Insurance Company, at that time, sir?
  "A. Yes, we did.
  "Q. Did you tell Mr. Thornberry—was there any conversation concerning why you wanted this information?
  "A. Yes, sir, because I was taking Mr. Lewis in as one-half partner in the property. He was buying one-half of my interest.
  "Q. At that time, when you discussed that with Mr. Thornberry, was there any discussion about assigning any interest in this policy to Mr. Lewis?

"A. Well, other than he would take care of the necessary endorsement."
On cross-examination, he testified thus:
  "Q. * * * And he [Thornberry] said he was going to take care of the matter of making an endorsement when you sold to Mr. Lewis?
  "A. Yes, sir.
  "Q. And you and Mr. Lewis were in his office at that time?
  "A. Yes, sir."

2. Thornberry, by his testimony, stated, that upon receipt of the premium payment he thought the 5 year policy had another year to run and that there was no reason to issue a new policy.

fire, Thornberry contacted the adjusters for Lumbermens, told them of the facts, and was advised to go ahead and "fill in" a new contract of insurance. Thornberry immediately did this and back dated the new contract to the expiration date of the old policy. This new policy was not delivered to the plaintiffs but remains in the possession of Thornberry. When payment on the policy was not made, plaintiffs commenced this action to recover the same.

Appellant first contends that, as a matter of law, there was no binding contract of insurance in force on the date of the fire because there was no meeting of the minds of the parties on such a contract and, in any event, Thornberry did not have authority under the agency agreement to bind it on a renewal of the January 30, 1956, policy. Plaintiffs, in countering that position, assert that the contract of insurance relied upon was entered into by appellant, through its authorized agent, when he offered to insure the premises by billing them for the annual premium and by their acceptance of that offer when they paid such annual premium. They argue that the payment of this premium was for the renewal of the existing insurance policy issued January 30, 1956, and the agent had authority to receive the premium payment and enter into a renewal contract of insurance binding on appellant.

■ Beyond dispute, under the agency agreement, Thornberry was the agent of Lumbermens. The question is whether, as such agent, he ·had authority to bind Lumbermens on a contract to renew the January 30, 1956, policy. For the answer to this question, we must look to the agency agreement and general principles of law applicable to principal and agent relationships. Under the plain terms of the agreement, Thornberry was vested with authority to write, countersign and deliver policies of insurance on behalf of Lumbermens. Blank policy forms bearing the signatures of authorized company officials were furnished by Lumbermens for this purpose. The agreement also expressly provided that all premiums he received were the property of Lumbermens and were to be held by him as trustee for it. In this connection, it is significant that Lumbermens sent out a "Renewal Notice" notifying Thornberry of the renewal date of the old policy and, by so doing, indicated that it desired to have the policy renewed. In fact, Lumbermens also notified Thornberry of the amount of the dividend due on the policy to be applied against the amount of the renewal premium. In view of these provisions of the agreement and the circumstances involved, we conclude that Thornberry had the requisite actual authority to enter into the contract renewing the insurance policy.

Our conclusion in this respect finds additional support in the general rule that:

"The authority of the insurer's agent is prima facie coextensive with the business entrusted to his care, particularly when the agent is engaged in business at a distance from the principal office of the insurer. An agent therefore has authority to adopt the ordinary means and pursue the course necessitated by the business he is employed to undertake, and which are necessary to accomplish the objects intended, and the company is bound by the agent's acts done within the limits of whatever authority may reasonably be presumed by the public to exist by reason of such business and the general manner of transacting it. Likewise, powers specifically granted to an insurance agent carry with them, by implication, such other and incidental powers as are directly appropriate to the specific powers granted." [3]

In Douglass v. Mutual Ben. Health & Accident Ass'n., 42 N.M. 190, 76 P.2d 453,

3. 3 Couch on Insurance 2d, § 26:54, p.p. 519–520. *Accord:* Lumbermens Mut. Ins. Co. v. Slide Rule & Scale Eng. Co., 7 Cir., 177 F.2d 305. Cf. Danciger Oil & Refining Co. v. Burroughs, 10 Cir., 75 F.2d 855, cert. denied, 295 U.S. 758, 55 S.Ct. 915, 79 L.Ed. 1700.

the Supreme Court of New Mexico said (76 P.2d at page 456):

"*  *  *  when agency is admitted by words or acts, the real authority of such agent is immaterial; the principal is bound by such apparent authority as his words and acts would indicate to a reasonably prudent man that the agent possessed; or, stating it differently, one dealing with a principal through his agent, if using reasonable judgment and discretion himself, may assume and rely upon the agent being clothed with the authority that the words and acts of his principal would naturally and reasonably cause him to believe the agent possessed. The apparent authority of an agent must be determined from the nature of the business entrusted to him, the words, acts, and conduct of the principal, and not from the unratified declarations or acts of the agent." [4]

And, the court further stated (76 P.2d at pages 457–458):

"The appointment of an agent to solicit insurance clothes him with very considerable authority, unless the authority implied by his appointment is limited, and such limitation called to the attention of one dealing with him.

*    *    *    *    *    *

"*  *  *  The powers of the agent are, prima facie, coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.  *  *  *"

Here, the limitations upon Thornberry's authority to enter into contracts of insurance, or renewals thereof, if any, were not called to plaintiffs' attention and, accordingly, under the circumstances they were justified in relying upon his apparent authority to enter into the renewal contract.

■ It is contended, however, that there was no meeting of the minds between the parties on the renewal contract. We do not agree. Rather, we think there was a complete meeting of the minds. As previously stated, the Company indicated a desire to continue the insurance in force when it sent Thornberry a notice of the premium to be due and the dividend to be allowed. The agent, Thornberry, offered to insure the premises under the conditions of the old policy of insurance when he billed plaintiffs for the annual premium on the policy and they accepted that offer when they paid such annual premium. Certainly all of the parties knew which particular premises were to be insured, the risk insured against is clear, the term during which the insurance was to continue is apparent and the consideration or premium was agreed upon and paid. Thus, all of the elements of a contract of fire insurance are present [5] and, inasmuch as Thornberry had the authority to enter into such a contract, a renewal contract binding upon appellant came into existence upon the payment to him of the premium by plaintiffs.

■ It is also urged that there was no actual insurance policy written up and delivered to plaintiffs between the expiration date of the January 30, 1956, policy and the time the fire occurred. This is true, but on the morning after the fire occurred and while the agency agreement was still in effect, Thornberry wrote up the renewal policy, back dating it to January 30, 1961, and sent two copies of it to Lumbermens,[6] as he was required to do. An insurance agent having the power to issue policies, as Thornberry did,

---

4. Accord: South Second Livestock Auction, Inc., v. Roberts, 69 N.M. 155, 364 P.2d 859; Houtz v. General Bonding & Insurance Co., 10 Cir., 235 F.2d 591; McNutt Oil & Refining Co. v. Mimbres Valley Bank, 10 Cir., 174 F.2d 311.

5. 44 C.J.S. Insurance § 227, p.p. 944–945.

6. Thornberry testified at the trial that he had written this policy at the request and upon the instructions of Lumbermens insurance adjusters who were investigating the loss and for the purpose of definitely insuring the building.

may, after a loss, fill up and deliver a policy which had been agreed to prior to the loss.[7]

Appellant's reliance upon the New Mexico Statute [8] restricting temporary or oral binders of insurance to a period not exceeding 15 days, in an effort to show that the insurance, if any, had expired prior to the fire, is misplaced since this action involves a contract renewing an existing policy of insurance and does not purport to involve a temporary or oral binder of insurance. In addition, the contract here to issue a renewal policy is more than an oral contract, it being evidenced by the written offer and acceptance.

Appellant next contends that it was entitled to a directed verdict on the complaint since the evidence conclusively shows no proof of loss was ever filed by either one or both of the plaintiffs.

It is the law in New Mexico that the statutory requirement of notice to, and filing of proof of loss with, the insurer by the insured is a condition precedent to the insurer's liability on the policy.[9] Also, the regular fire policy form furnished to Thornberry by Lumbermens provided for such a notice in case of loss. No pre-trial order defining the issues, as provided for in Fed.R.Civ.P. 16, 28 U.S.C.A. is contained in the record, so we must look to the pleadings to determine the triable issues. The pleadings with respect to conditions precedent are governed by the provisions of Fed.R.Civ.P. 9(c), 28 U.S.C.A.[10] An examination of the pleadings in this case discloses that plaintiffs met the requirements of Rule 9(c) by averring generally in their complaint that they had fully complied with all of the terms and conditions of the policy. However, the same cannot be said of appellant. In the answer, it entered a general denial that the terms and conditions of the policy had been complied with but did not specifically and with particularity deny the filing of a proof of loss with it as required by Rule 9(c). Accordingly, whether a proof of loss was filed or not was not an issue in the case and no evidence in that connection should have been received and we do not reach the question of whether appellant waived the filing of proof of loss.

Appellant's third contention is that the court erred in numerous respects in instructing the jury. These alleged errors in the instructions will not be discussed, however, since in our opinion, the case should never have been submitted to the jury. There was no conflict in the evidence as appellant put no witnesses on the stand to refute plaintiffs' evidence and offered only two exhibits, about which there was no dispute, to make its defense in the case.

Appellant's fourth contention is that there was never any policy of insurance issued in favor of Lewis and, therefore, the lower court erred in submitting to the jury any question concerning his right to recover. It also contends in this connection that the entire policy was voided by virtue of the conveyance to Lewis from Bowman since no transfer of the policy or endorsement was ever issued.

We agree with appellant that this question should not have been submitted to the jury but for different reasons. The court, as we have stated, should have ruled upon the issue as a matter of law and, in so doing, should have directed a verdict for both plaintiffs.

7. Franklin Fire Ins. Co. of Philadelphia v. Colt, 20 Wall. 560, 87 U.S. 560, 22 L.Ed. 423; 29 Am.Jur., Insurance, § 193, p. 585.

8. N.M.S.A.1953 Comp. § 58–8–10.

9. N.M.S.A.1953 Comp. § 58–8–10; Zengerle v. The Commonwealth Insurance Co. of N. Y., 63 N.M. 454, 321 P.2d 636.

10. Rule 9(c) provides:
"In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

The record is clear that Lumbermens' agent, Thornberry, had personal knowledge of the transfer to Lewis of a ½ interest in the insured premises and told plaintiffs he would "take care of the matter of making an endorsement" to the policy to reflect the change in ownership. The law, also, is clear on this point. As a general rule, the knowledge of, or notice to, an insurance agent which is acquired by the agent while acting within the scope of his authority is chargeable to the insurer even though such notice or knowledge is not actually communicated to the insurer.[11] And, it has been held that notice of change of interest in insured property to the one who took the application for, and delivered, the policy is binding on the insurer where a statute provides that any person who shall solicit an application for insurance shall, in all matters relating to the policy, be regarded as an agent of the company issuing the policy.[12] New Mexico has such a statute [13] and notice of the change of interest in the insured building was given to Thornberry, the agent who took the application for and delivered the policy, and under the express terms of the agency agreement he had authority to prepare customary endorsements and change of policies. We must conclude, as a matter of law, that notice of the change in ownership of the insured premises was given to the agent while acting within the scope of his authority.

■ Lastly, appellant urges error in the disposition of its third party proceeding against Thornberry, and contends that if plaintiffs are entitled to prevail, then it is entitled, as a matter of law, to a judgment against Thornberry. Belatedly, it bases this contention on the theory of negligence on the part of Thornberry. No such allegation was contained in the third-party complaint and no mention of it was made in the opening state-ment of counsel to the jury upon the third-party cause of action. There is no necessity for again reciting the undisputed facts of the case. We need only to again point out that Thornberry was the authorized agent of Lumbermens. As such he had authority to solicit and write policies for it, binding the Company thereby, and to collect premiums on such policies, which premiums immediately became the property of Lumbermens. He was, therefore, clothed with full authority to enter into contracts, binding upon Lumbermens, to issue policies of insurance. Stress is laid upon Thornberry's failure to write up and deliver a policy to the plaintiffs and to furnish copies of such policy to appellant. It cannot be seriously contended that this failure or any other act or failure to act on his part caused Lumbermens to suffer any additional loss. If he had issued and delivered a policy to plaintiffs upon receipt of the premium and forwarded the copies, Lumbermens' liability would have been the same as it now is, there being nothing in the record to show that Lumbermens would not have accepted and assumed the risk.

The case of United States Casualty Company v. Hiers, 233 S.C. 333, 104 S.E. 2d 561, is relied upon by appellant to impose liability, as a matter of law, upon Thornberry. The facts in that case are entirely different than those here, as there the agent's violation of express instructions regarding the policy in question resulted in liability on the part of the company, which would not have existed had the express instructions been followed.

As to both plaintiffs' cause of action against Lumbermens, and its third-party cause of action against Thornberry, the material facts were without dispute at the close of all the evidence. Only questions of law remained for a final disposi-

11. Douglass v. Mutual Ben. Health & Accident Ass'n., 42 N.M. 190, 76 P.2d 453; 29A Am.Jur., Insurance, § 1019, p.p. 192–193; 44 C.J.S. Insurance § 154, p.p. 827–828; 3 Couch on Insurance 2d §§ 26:132 and 26:133, p.p. 655–664.

12. Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168.

13. N.M.S.A.1953 Comp. § 58-5-28.

tion of the entire controversy. Therefore, we conclude plaintiffs' Motion For A Directed Verdict and Thornberry's Motion To Dismiss should have been sustained.

In keeping with the spirit of the Federal Rules of Civil Procedure, and particularly Rule 16, this case should have been pre-tried and a pre-trial order entered, at least setting forth the undisputed facts and clearly defining the issues. Had this been done, it would have become clear that no material factual issues remained and a determination of the law applicable would have disposed of the entire case. A jury trial would have been avoided and both time and expense saved for all concerned.

The judgment entered in favor of Bowman and Lewis upon the complaint and in favor of Thornberry upon the third-party complaint is affirmed.