Denver Earl ANDERSON,
Plaintiff–Appellant,

v.

UNITED TELEPHONE COMPANY OF KANSAS, Defendant–Appellee.

No. 89–3152.

United States Court of Appeals,
Tenth Circuit.

May 6, 1991.

Rehearing Denied June 6, 1991.

Kelly L. McClelland, Hale, Kincaid, Waters & Allen, P.C., Liberty, Mo., and Benjamin F. Farney, Law Offices of Benjamin F. Farney, Overland Park, Kan., for plaintiff-appellant.

Arlyn D. Haxton (Jennifer A. Putman with him on the brief), of Armstrong, Teasdale, Schlafly, Davis & Dicus, Kansas City, Mo., for defendant-appellee.

Before SEYMOUR, TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff-appellant Denver Anderson appeals a district court order granting a motion for judgment notwithstanding the verdict in favor of defendant-appellee United Telephone Company of Kansas (UTC). On appeal, Anderson argues the district court erred by finding a criminal blacklisting conviction is required for civil blacklisting liability. Anderson also argues the district court erred in granting a judgment for UTC because UTC did not base the motion for judgment n.o.v. on the same grounds raised in the motion for directed verdict. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Anderson was terminated from his employment with UTC in November 1985. In December 1985, he interviewed with United Telephone Company of Missouri, a company affiliated with UTC. He was not offered employment with that company. Anderson also was denied employment with Installation Technicians, Inc., a company that has contracted with UTC for telephone installation. Anderson ultimately brought suit against UTC in federal district court, alleging civil blacklisting in violation of title 44, section 119 of the Kansas Statutes; age discrimination and retaliation in violation of the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621 *et seq.;* breach of an implied employment contract; and fraud. Anderson concedes UTC has not been prosecuted for criminal blacklisting.

At the close of Anderson's case at trial, UTC moved for a directed verdict on the five claims. The district court entered judgment for UTC on the fraud claim. At the close of all the evidence, UTC moved for a directed verdict on the remaining claims. UTC specifically argued the evidence was insufficient to support a claim for civil blacklisting under section 44–119. The court deferred ruling on UTC's motion for directed verdict and submitted the case to the jury. The jury found in favor of UTC on the age discrimination, retaliation, and breach of contract claims. On the civil blacklisting claim, however, the jury returned a verdict for Anderson and awarded damages.

Following the jury verdict, UTC filed a motion for judgment n.o.v. and a motion for a new trial on the blacklisting claim, again arguing the evidence is insufficient to support a jury verdict against UTC for civil blacklisting. In a supplemental brief supporting the motion for judgment n.o.v., UTC argued Anderson's failure to introduce evidence that UTC had been convicted of criminal blacklisting precluded recovery for civil blacklisting. Anderson filed a motion for new trial on the breach of contract claim. The court ultimately denied Anderson's motion for a new trial on the breach of contract claim but granted UTC's motion for judgment n.o.v. on the blacklisting claim.

■ Anderson contends a criminal conviction under sections 44–117 and 44–118 is not required for civil liability under section 44–119. We review this question of statutory interpretation de novo. *See Stissi v. Interstate & Ocean Transp. Co.,* 765 F.2d 370, 374 (2d Cir.1985); *United States v. Horowitz,* 756 F.2d 1400, 1403 (9th Cir.), *cert. denied,* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985). In 1897, the Kansas legislature enacted the blacklisting law at issue in this case. The statute states:

> Any employer of labor in this state, after having discharged any person from his service, shall not prevent or attempt to prevent by word, sign or writing of any kind whatsoever any such discharged employee from obtaining employment from any other person, company or corporation, except by furnishing in writing, on request, the cause of such discharge.

Kan.Stat. § 44–117 (1986). The statute establishes criminal penalties for a blacklisting violation:

> Any employer of labor, his agent or employee, who shall violate the provisions of this act shall be guilty of a misdemeanor, and shall upon conviction be fined for each offense the sum of one hundred dollars and thirty days' imprisonment in the county jail.

*Id.* § 44–118. The statute also provides for civil penalties:

> Any person, firm or corporation *found guilty* of the violation of this act, shall be liable to the party injured to an amount equal to three times the sum he may be injured, and such employers of labor shall also be liable for a reasonable attorney fee, which shall be taxed as part of the costs in the case.

*Id.* § 44–119 (emphasis added).

In discerning the Kansas legislature's intent in section 44–119, we first look to the statutory language. *Mead Corp. v. Tilley,* 490 U.S. 714, 722, 109 S.Ct. 2156, 2161–62, 104 L.Ed.2d 796 (1989); *Watt v. Alaska,* 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Legislative purpose generally is expressed in the ordinary meaning of the words the legislature has used. *See United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Further, the legislature's use of two different terms is presumed to be intentional. *National Wildlife Fed'n v. Gorsuch,* 693 F.2d 156, 172 (D.C.Cir.1982) (citing *Russell v. Law Enforcement Assistance Admin. of the United States,* 637 F.2d 354 (5th Cir. Unit A 1981)).

Here, an examination of the statutory language indicates a criminal blacklisting

conviction is required for civil recovery under section 44–119. The statute states: "Any ... corporation found guilty of the violation of this act, shall be liable to the party injured...." 44 Kan.Stat. § 44–119. In this provision, the legislature specifically used the terms "guilty" and "liable." Presuming the use of both terms to be intentional, we construe these terms in an ordinary way to mean criminal guilt and civil liability. When these terms are regarded in the context of the entire provision, we are convinced the Kansas legislature meant a corporation shall "be liable" only when it has been "found guilty" of criminal blacklisting. Based on the plain language of the statute, we hold a criminal blacklisting conviction is an element of a civil blacklisting claim against an employer under Kansas law.

▪ Anderson contends the district court erred in granting judgment for UTC because UTC did not base the motion for judgment n.o.v. on the same grounds raised in the motion for directed verdict. Rule 50(b) states: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." According to Rule 50(a), "[a] motion for a directed verdict shall state the specific grounds therefor." A motion for judgment n.o.v. cannot assert new matters not presented in the motion for directed verdict. *Dow Chemical Corp. v. Weevil–Cide Co.*, 897 F.2d 481, 486 (10th Cir.1990); *United States v. Fenix & Scisson, Inc.*, 360 F.2d 260, 265 (10th Cir.1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 599 (1967).

▪ This court has recognized that in satisfying the requirements of Rule 50, technical precision is unnecessary. *Fenix & Scisson*, 360 F.2d at 266. Because the requirement of Rule 50 that a directed verdict motion must precede a motion for judgment n.o.v. is " 'harsh in any circumstance[ ],' " a directed verdict motion should not be reviewed narrowly but rather in light of the purpose of the rules to

secure a just, speedy, and inexpensive determination of a case. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2537, at 597 n. 32 (1971) (quoting *Mosley v. Cia. Mar. Adra S.A.*, 362 F.2d 118, 121–22 (2d Cir.1966), cert. denied, 385 U.S. 933, 87 S.Ct. 292, 17 L.Ed.2d 213, 385 U.S. 933, 87 S.Ct. 296, 17 L.Ed.2d 213 (1966)); see also *National Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir.1986) (taking liberal view because "rule is a harsh one"). As the Fourth Circuit has noted, "rigid application of this rule is inappropriate ... where such application serves neither of the rule's rationales—protecting the Seventh Amendment right to trial by jury, and ensuring that the opposing party has enough notice of the alleged error to permit an attempt to cure it before resting." *FSLIC v. Reeves*, 816 F.2d 130, 138 (4th Cir.1987); see also *McCarty v. Pheasant Run, Inc.* 826 F.2d 1554, 1556 (7th Cir.1987) (modern rationale of rule is opposing party should have opportunity to rectify deficiencies in evidence presented to jury before it is too late); *Miller v. Rowan Cos.*, 815 F.2d 1021, 1024 n. 4, 1025 (5th Cir.1987) (aims of rule include avoiding trapping plaintiff after submittal to jury because he cannot then cure defects in proof and securing fair trial); *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1429 (9th Cir.1986) (purpose of directed verdict motion is to provide notice of claimed evidentiary insufficiencies and preserve issue of sufficiency of evidence as question of law); *Sharon Steel Corp.*, 781 F.2d at 1549 (purpose of directed verdict requirement is to avoid ambushing court and opposing party after the verdict so that only remedy is completely new trial) (citing *Quinn v. Southwest Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir.1979)); *Acosta v. Honda Motor Co.*, 717 F.2d 828, 831–32 (3d Cir.1983) (same) (citing *Wall v. United States*, 592 F.2d 154 (3d Cir.1979)).

Here, UTC moved for a directed verdict on the blacklisting claim after Anderson had presented his case at trial. At the close of all the evidence, UTC again moved for a directed verdict on the blacklisting claim. In this directed verdict motion, UTC specifically argued there was insufficient

evidence to support a claim for civil blacklisting under section 44–119. Following the jury verdict, UTC filed a motion for judgment n.o.v. and a motion for new trial on the grounds the evidence was insufficient to support the civil blacklisting claim. Because UTC raised insufficiency of the evidence on the blacklisting claim as specific grounds for both the motion for directed verdict and the motion for judgment n.o.v., we hold UTC has complied with the requirements of Rule 50.

Anderson argues Rule 50 demands that UTC must have stated in the directed verdict motion the evidence is insufficient to prove the element of a criminal blacklisting conviction. Although Rule 50(a) requires a motion for directed verdict to state the "specific grounds," the rule does not define how specific the grounds must be. We are convinced that UTC's directed verdict motion satisfies the rule's requirement. To be sure, a more specific motion may be upheld. *See, e.g., Acosta,* 717 F.2d at 832; *Thezan v. Maritime Overseas Corp.,* 708 F.2d 175, 179 n. 2 (5th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). However, a significant number of the cases interpreting Rule 50's specificity requirement have accepted less specificity in directed verdict motions. *See, e.g., Sharon Steel,* 781 F.2d at 1548–49 (motion raising issue of sufficiency of evidence for liability, damages, and future lost profits sufficient to raise sufficiency of evidence of injury to goodwill and reputation); *Stewart v. Thigpen,* 730 F.2d 1002, 1006 n. 2 (5th Cir.1984) (motion requesting "the verdict be directed in the plaintiff's favor and award damages to the plaintiff" sufficient when parties and court understood basis for motion was sufficiency of evidence to support claim); *Acosta,* 717 F.2d at 832 (motion raising sufficiency of evidence for "Counts I and the remaining counts" under theories of strict liability and negligence sufficient to raise issue of punitive damages); *Cortez v. Life Ins. Co. of America,* 408 F.2d 500, 503 (8th Cir. 1969) (motion based on lack of grounds for liability sufficient).

Because Rule 50(a) does not itself define "specific grounds," we must determine in each case whether the purposes the rule embodies have been served. *See Acosta,* 717 F.2d at 832 ("communicative content, 'specificity' and notice-giving function of an assertion [in a directed verdict motion] should be judged in context"); *see also* K. Llewellyn, The Bramble Bush 157–58 (1960) ("[T]he rule follows where its reason leads; where the reason stops, there stops the rule."); *cf. Benson v. Allphin,* 786 F.2d 268, 274 (7th Cir.), *cert. denied,* 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986) (construing Rule 50(b) liberally to serve rule's purpose).

We believe requiring more specificity in this case would be harsh and run contrary to the policy favoring a liberal application of the rules to allow correction of evidentiary shortcomings and provide a just and efficient determination of the case. More specific notice would be useless here because there is no possibility Anderson could have corrected the evidentiary shortcoming during trial. Like the Fourth Circuit in *Reeves,* we refuse to reverse the district court's judgment and grant a new trial based on an alleged procedural error that did not prejudice the plaintiff in any way. 816 F.2d at 138; *see also Benson,* 786 F.2d at 274 (because question of qualified immunity is addressed to court, not jury, strict compliance with Rule 50 not necessary when no prejudice involved). The defendant here raised the defense of failure to state a claim for blacklisting at the first opportunity in the answer to the complaint. Clearly, Anderson's right to a jury trial and possible lack of notice of the deficiency of the blacklisting claim did not prejudice him. Further, granting Anderson a new trial on the blacklisting claim would defeat the rule's objective of ensuring a just and efficient determination since the record shows Anderson cannot prove he is entitled to relief based on our interpretation of section 44–119.

■ Anderson finally contends UTC waived the defense of failure to plead and prove a condition precedent—here, a criminal conviction under section 44–118—by not pleading it with the specificity and particularity Rule 9(c) of the Federal Rules of

Civil Procedure requires. Although the district court labeled the criminal conviction requirement a "condition precedent," thereby apparently implicating the special pleading requirements of Rule 9(c), we reject this characterization.

We are convinced the requirement of criminal liability is simply a statutory element that does not implicate Rule 9(c). Rule 9(c) requires: "A denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity." This special pleading requirement has been applied to conditions precedent in common law contracts claims and nonjurisdictional agency exhaustion requirements in some federal statutory claims. *See, e.g., McKee–Berger–Mansueto, Inc. v. Board of Educ.*, 626 F.2d 559, 562–63 (7th Cir.1980) (lack of specific statements in pleadings contesting adequacy of company's performance of contract for construction management services implicates Rule 9(c)); *Ginsburg v. Insurance Co. of N. Am.*, 427 F.2d 1318, 1321–22 (6th Cir. 1970) (failure to specifically deny timely filing of proof of loss in insurance contract implicates Rule 9(c)); *Lumbermens Mut. Ins. Co. v. Bowman*, 313 F.2d 381, 387 (10th Cir.1963) (proof of loss is condition precedent to enforcement of insurance contract); *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 999 n. 7, 1000–01 (11th Cir.1982) (failure to allege in pleadings exhaustion of administrative remedies implicates Rule 9(c)). We find no indication in the rules or the case law that the special pleading requirements of Rule 9(c) were meant to apply more broadly to pleading the basic elements of a cause of action. *Cf. EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 106–07 (5th Cir. Unit A 1981) (federal statute requiring "proper averment in [EEOC's] complaint that conciliation has failed" creates condition precedent subject to Rule 9(c)). Although we acknowledge the proof of all statutory elements may be described loosely as a precondition to recovery, we conclude the statutory requirement of criminal blacklisting is not a condition precedent as contemplated by Rule 9(c).

Much of the confusion in this case rises from the fact the plaintiff simply failed to offer evidence at trial entitling him to relief. We refuse to find the defendant acquired responsibility to notify the court of specific factual shortcomings beyond raising the issue of sufficiency of the evidence on the blacklisting claim in the motions for directed verdict and judgment n.o.v. When there have been no procedural violations, the benefit of hindsight will not cause us to conclude the defendant must suffer from both parties' failure to sharpen for the court the specific legal question of the statutory requirements of section 44–119. Under the facts of this case, we see nothing improper in the determination of this specific legal question post-verdict in the hearing on the judgment n.o.v. when it did not affect the factual determinations or weighing of the evidence on the issues before jury. In the interests of fairness to the parties and judicial efficiency, we AFFIRM.

SEYMOUR, Circuit Judge, dissenting.

I must respectfully dissent. In my view the district court's actions here violated the Federal Rules of Civil Procedure in at least two respects. The majority upholds this conduct by engaging in circular reasoning under which the lack of compliance with one rule is somehow excused by noncompliance with another.

First, the grant of judgment n.o.v. in this case was a clear abuse of discretion under the case law of this and other circuits. The district court based its judgment on Anderson's failure to establish a prior criminal conviction for blacklisting, an element that the court viewed as a prerequisite for civil liability under the Kansas statute. The majority agrees with the district court's construction of this statute, stating that the statute's *plain language* requires proof of a criminal conviction. Notwithstanding this plain language, defendant did not originally move for either a directed verdict or j.n.o.v. on this ground. Indeed the district court raised the issue *sua sponte* after the jury had returned a verdict and after defendant had filed its post-trial motions on other grounds.

In accordance with settled authority, this court has clearly held that "[o]nly questions raised in a prior motion for directed verdict may be pursued in a motion for judgment notwithstanding the verdict." *Dow Chemical Corp. v. Weevil–Cide Co.*, 897 F.2d 481, 486 (10th Cir.1990); *see Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 n. 2 (10th Cir.1987); 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.08 (2d ed. 1990). Here, of course, the ground upon which the district court granted j.n.o.v. was not raised by defendant in either its motion for directed verdict or its motion for j.n.o.v. Two other circuits have reversed a district court's grant of j.n.o.v. under similar circumstances. *See Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 617 (3d Cir.1989); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 171–72 (5th Cir.1985). If, as the majority asserts, the statute plainly requires a prior conviction, defendant has no excuse for not asserting the requirement in a timely fashion.

The majority seeks to avoid the fact that the court's grant of j.n.o.v. here clearly contravened governing authority by attempting to bring this case within a line of opinions excusing lack of technical compliance with Fed.R.Civ.P. 50. In so doing the majority is wrong on the record and the law. The cases upon which it relies that do not require technical compliance, *see* Maj. op. at 8, are readily distinguishable because they involve circumstances where the parties and the district court had adequate actual notice that the issue was in the case prior to jury deliberation. It is undisputed on this record that the need for a prior criminal blacklisting conviction was not anticipated or addressed by either party until the court raised it sua sponte *after* defendant's post-trial motion had been filed.[1] The alleged requirement was simply not an issue in the case until that point.

Indeed, defendant's motion for directed verdict and its original motion for j.n.o.v. made only general allegations that the evidence was insufficient as a matter of law to support the blacklisting claim. Neither motion specifically raised the lack of evidence of a prior blacklisting conviction. "A motion for a directed verdict shall state the *specific grounds* therefore." Fed.R.Civ.P. 50(a) (emphasis added). In the face of Rule 50(a), the majority would hold that a general assertion of insufficient evidence preserves an argument that the evidence is insufficient in a particular respect. However, the law is clear that a general allegation of insufficiency does not preserve unarticulated specific arguments which might support that general assertion. *See, e.g., SuperTurf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1279 (8th Cir.1981); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2533, at 579 (1971) ("A request for an instruction that 'on the basis of the evidence and the applicable law, you are directed to find a verdict for the plaintiff' is not sufficient compliance with [Rule 50(a) ]."); *cf. Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 357 (1st Cir.1989) ("A general defense that the complaint fails to state a claim ordinarily will not preserve unarticulated arguments in support of that defense."), *cert. denied*, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Brooks v. Monroe Sys. for Business, Inc.*, 873 F.2d 202, 205 (8th Cir.) (same), *cert. denied*, — U.S. —, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).

While technical compliance with Rule 50(a) may not be necessary in some circumstances, the *majority's position here relieves a party from any compliance at all.* Under the majority's holding, a defendant who moves for a directed verdict by merely asserting generally that the evidence is insufficient is thereafter *free to raise any more specific argument for the first time after trial.* The majority's

---

1. The majority states that "[t]he defendant here raised the defense of failure to state a claim for blacklisting at the first opportunity in the answer to the complaint." Maj. op. at 1504. Of course, all defendant asserted was "[t]hat Count V of plaintiff's Complaint fails to state a cause of action upon which relief may be granted against this defendant." Separate Answer of Defendant United Telephone Company of Kansas at 17. Defendant did not specify any failure it might have had in mind. The undeniable fact is that *defendant never* raised the issue on which the majority grants relief. The district court itself raised it post-trial.

broad view of "lack of technical compliance" thus simply swallows up the Rule itself.

Nor can I agree with the majority's conclusion that affirming the district court is justified because Anderson will have suffered no prejudice. It is true that whether a prior conviction is an element of Anderson's claim is a legal issue that would not have gone to the jury in any event. Thus Anderson has suffered no prejudice to his right to a jury trial. *See Benson v. Allphin*, 786 F.2d 268, 273–74 (7th Cir.1986). Moreover, it is undisputed that Anderson cannot establish a prior criminal conviction, so his lack of notice before the verdict was returned did not prejudice his ability to remedy the deficiency prior to jury deliberation. *Id.* at 273–75. Nevertheless, it is not accurate to state, as the majority does, that Anderson was therefore not prejudiced in any way. The "failure to raise the claim in a timely fashion obliged [Anderson] to expend the effort and expense of a trial and numerous post-trial motions which might have been avoided had the claim" been timely raised and decided favorably to defendant. *Weaver v. Bowers*, 657 F.2d 1356, 1362 (3d Cir.1981) (en banc). As a practical matter, such prejudice is real and substantial, and of the type that the waiver principles embodied in the Rules were designed to prevent.

Finally, the majority acknowledges that the district court labeled the requirement a condition precedent and that defendant did not comply with Fed.R.Civ.P. 9(c), which requires that the "denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity." Defendant here, of course, did not raise the lack of a criminal conviction as the omission of a required condition precedent. This court has specifically held that when a defendant does not plead nonperformance of a condition specifically and with particularity as required by Rule 9(c), the failure of the condition is not an issue in the case and will not be addressed by the court on appeal. *See Lumbermens Mut. Ins. Co. v. Bowman*, 313 F.2d 381, 387 (10th Cir.1963); *see also Brooks v. Monroe Sys. for Business, Inc.*, 873 F.2d 202, 205

(8th Cir.1989); *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1001, 1009 (11th Cir.1982); *McKee–Berger–Mansueto v. Board of Educ.*, 626 F.2d 559, 562–63 (7th Cir.1980); *Ginsburg v. Insurance Co. of N. Am.*, 427 F.2d 1318, 1321–22 (6th Cir.1970).

The majority seeks to avoid the import of these cases by concluding that "the requirement of criminal liability is simply a statutory element that does not implicate Rule 9(c)." Maj. op. at 1505. Even if I were to agree with the above statement, it does not support the majority's conclusion that the lack of the requirement may be raised for the first time after trial. If, as the majority asserts, a prior conviction is an element of Anderson's claim, the district court's ruling is necessarily grounded on Anderson's failure to state a claim upon which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6). Rule 12(h)(2), however, provides that "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, *or at the trial on the merits.*" (Emphasis added). The failure to state a claim for relief cannot be raised for the first time *after* trial on the merits. *Weatherhead v. Globe Int'l., Inc.*, 832 F.2d 1226, 1228 (10th Cir.1987) ("[A] defense of dismissal is waived ... when presented after trial."); *see also Brown*, 891 F.2d at 356–57 (citing cases); *Brooks*, 873 F.2d at 205.

> "According to the plain language of Rule 12(h)(2), the [defense of failure to state a claim is] waived if [it is] not presented before the close of trial. Thus, for example, [it] may not be asserted for the first time on appeal. *Nor can [this defense] be asserted through any type of post-trial motion.*"

5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1392, at 763 (2d ed. 1990) (footnote omitted) (emphasis added). Accordingly, whether considered a condition precedent or an element of the cause of action, the issue cannot be raised for the first time post-trial. *See Brooks*, 873 F.2d at 204–05.

In sum, I cannot concur in an opinion under which district courts are free to raise unpled issues sua sponte and out of time, in derogation of the pleading requirements of the federal rules. This case is like any other in which a party's failure to comply with the rules renders unavailable an issue that might otherwise be dispositive. The majority's approval of the district court's action resolving the case on what the district court believed ought to have been pled, rather than on the issues actually raised at trial, renders meaningless the rules meant to govern the orderly administration of justice.

**COUNTY LINE INVESTMENT COMPANY and, Wagco Land Development, Inc., Plaintiffs–Appellants,**

v.

**Calvin L. TINNEY, Defendant–Appellee.**

Nos. 89–5118, 89–5119.

United States Court of Appeals, Tenth Circuit.

May 24, 1991.

Oliver S. Howard, Dennis C. Cameron, of Gable & Gotwals, and David A. Carpenter, Tulsa, Okl., for plaintiffs-appellants.

Charles W. Shipley, Blake K. Champlin, and Leslie C. Rinn, of Shipley & Schneider, Tulsa, Okl., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and MOORE and BRORBY, Circuit Judges.

PER CURIAM.

These appeals arise out of the closure of a sanitary landfill in Wagoner County, Oklahoma.[1] The district court granted summary judgment against County Line Investment Company (County Line) and Wagco Land Development, Inc. (Wagco), two current and former landfill owners, in their attempt to recover investigation and closure costs from Calvin L. Tinney, another former landfill owner, under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (1988), and a claim based on the state common law theory of unjust enrichment. *County Line Investment Co. v. Tinney*, 30 ERC 1062, 1989 WL 237380 (N.D.Okla.1989). Wagco and

---

1. Upon joint motion of the parties, these appeals were ordered submitted on the briefs.

County Line timely appealed the district court's judgment. We affirm.[2]

### Background

In February 1978, defendant-appellee Tinney leased property he owned in Wagoner County, Oklahoma to Donald and Norma Tulk for use as a sanitary landfill. The Tulks operated the landfill, known as D & N Landfill, on this property from 1978 until approximately November 1983. During this period, they allegedly permitted waste containing hazardous substances to be placed on the property.

In March 1982, plaintiff-appellant County Line purchased the property containing the D & N Landfill from Tinney. Sometime later, the Tulks began closure activities at the site as required by regulations of the Oklahoma State Department of Health (OSDH) and in cooperation with the OSDH.[3] In early 1984, however, the Tulks abandoned the Landfill before completing closure. County Line was aware of the Tulks' activities and their abandonment of the site and was in communication with OSDH regarding the site during this period. County Line did not complete closure of the Landfill.

In June 1985, County Line conveyed the property encompassing the D & N Landfill to plaintiff-appellant Wagco, another subsidiary of County Line's parent company. In February 1986, Wagco received notice from the U.S. Environmental Protection Agency (EPA) that hazardous substances possibly were being released from the Landfill. Wagco responded in the spring and summer of 1986 by conducting a magnetometer/metal detector survey of the site to locate any hazardous waste drums buried there and by digging and sampling one or more trenches in the areas showing the highest metals concentrations. These efforts were overseen by an EPA contrac-

tor. EPA subsequently decided not to take any action at the site.

In November 1986, representatives of Wagco and County Line (collectively "New Owners") met with EPA and OSDH officials to discuss the results of Wagco's investigations. At this meeting, Wagco agreed to undertake a formal closure of the Landfill pursuant to OSDH rules and regulations for sanitary landfills. Wagco contacted Tinney in February 1987 and requested his input and financial participation in developing and implementing the closure and post-closure plan. Tinney refused. Shortly thereafter, Wagco submitted a closure/post-closure plan to the OSDH.[4] OSDH accepted the plan, which the New Owners implemented and completed by June 1987. The New Owners' total cost for investigating and closing the Landfill exceeded $360,000.

The New Owners brought this action against Tinney in June 1988. In it, they sought reimbursement for their costs in investigating and closing the Landfill under three theories. First, they alleged that Tinney, as a former owner of the Landfill at a time when hazardous substances were being disposed of there, was jointly and severally liable for these costs under the private cost recovery provisions of CERCLA section 107, 42 U.S.C. § 9607. This section provides, as relevant to this action, that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... any ... necessary costs of response incurred by any other person consistent with the national contingency plan." *Id.* § 9607(a). In a second claim, the New Owners alleged that they were entitled to contribution from Tinney under CERCLA section 113(f)(3)(B), *id.* § 9613(f)(3)(B), which provides that:

**2.** Tinney's Objection to Amended Transcript Designation and Motion to Strike Portions of Appellants' Opening Brief is denied.

**3.** These closure activities consisted of covering portions of the landfill and attempting to establish vegetation over the fill.

**4.** This plan proposed contouring of the site surface to create a leachate control system, impoundment of all surface water at the site, establishment of final native vegetative cover, installation of gas vents, construction of a groundwater monitoring system and implementation of a post-closure monitoring program.

A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement [with the United States or a State].

*Id.* Finally, the New Owners asserted an unjust enrichment claim against Tinney under Oklahoma law.

After extensive discovery, Tinney filed a motion for summary judgment as to each of the New Owners' three claims. The district court granted this motion and entered judgment for Tinney on June 30, 1989.

## Discussion

The New Owners challenge the district court's entry of summary judgment on each of its three claims. We review the district court's decision on each claim *de novo* under the standard prescribed by Federal Rule of Civil Procedure 52(c). *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990). We will affirm the district court's grant of summary judgment on each only if we find "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Abercrombie,* 896 F.2d at 1230. The party moving for summary judgment has the initial burden of identifying for the trial court the absence of genuine issues of fact, but once this burden is satisfied, summary judgment is mandated if the nonmovant fails to come forward with specific evidence demonstrating a triable issue of fact as to each essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A. Private cost recovery under CERCLA section 107

The district court entered summary judgment on the New Owners' section 107 claim upon finding that the undisputed evidence established that their costs in investigating and closing the Landfill were not incurred "consistent with the national contingency plan." The national contingency plan (NCP) is a set of regulations promulgated by EPA that "establish[es] procedures and standards for responding to releases of hazardous substances." 42 U.S.C. § 9605; *see* 40 C.F.R. Part 300 (1988). The version of the NCP in effect during the New Owners' investigation and closure of the Landfill [5] stated that:

(a)(1) Any person may undertake a response action to reduce or eliminate the release or threat of release of hazardous substances, or pollutants or contaminants. Section 107 of CERCLA authorizes persons to recover certain response costs consistent with this Plan from responsible parties.

(2) For purposes of cost recovery under section 107 ... a response action will be consistent with the NCP ... if the person taking the response action:

.    .    .    .    .

(ii) Where the action is a remedial action:

(A) Provides for appropriate site investigation and analysis of remedial alternatives as required under § 300.68;

(B) Complies with the provisions of paragraphs (e) through (i) of § 300.68 [establishing standards and procedures for choosing a site remedy];

(C) Selects a cost-effective response; and

(D) Provides an opportunity for appropriate public comment concerning the selection of a remedial action consistent with paragraph (d) of § 300.67 [requiring a study outlining alternative remedial measures to be provided to the public for at least a twenty-one day

5. This version of the NCP, which became effective in 1985, *see* 50 Fed.Reg. 47,951 (codified at 40 C.F.R. Part 300 (1988)) [hereinafter 1985 NCP], was revised pursuant to final regulations issued March 8, 1990, effective April 9, 1990. 55 Fed.Reg. 8666 (1990) [hereinafter 1990 NCP].

review and comment period] unless compliance with ... State and local requirements ... provides a substantially equivalent opportunity for public involvement in the choice of remedy. 1985 NCP, 40 C.F.R. § 300.71 (1988).